# EXHIBIT A

Lawrence A. Organ (SBN 175503)
Julianne K. Stanford (SBN 290001)
Emily G. Kohlheim (SBN 342737)
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, CA 94960
Telephone: (415) 453-4740
Facsimile: (415) 785-7352
Email: larry@civilrightsca.com
      julianne@civilrightsca.com
      emily@civilrightsca.com    Per local Rule, This case is assigned to
                                       Judge Fannin, Jill C, for all purposes.

Attorneys for Plaintiff
Lina Rak

SUMMONS ISSUED

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF CONTRA COSTA–UNLIMITED JURISDICTION

| | |
|---|---|
| LINA RAK,<br><br>          Plaintiff,<br><br>v.<br><br>SAINT MARY'S COLLEGE OF CALIFORNIA; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No.: C22-02097<br><br>**COMPLAINT FOR DAMAGES**<br><br>(1) Disability Discrimination in Violation of 29 U.S.C. § 794;<br>(2) Disability Discrimination in Violation of Edc. Code § 66270;<br>(3) Disability Discrimination in Violation of Gov. Code § 11135(a);<br>(4) Sex Discrimination in Violation of 20 U.S.C. § 1681(a);<br>(5) Gender Discrimination in Violation of Edc. Code § 66270; and<br>(6) Sex Discrimination in Violation of Gov. Code § 11135(a)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lina Rak complains and alleges as follows:

## INTRODUCTION

1.      Lina Rak is a childhood cancer survivor. The lifesaving treatment Ms. Rak received left her with disabilities she lives with to this day, including without limitation hearing loss and partial facial paralysis.

2.      In her adolescence, Ms. Rak took up rowing. She excelled, earning a spot on the Junior National Team. In or around Fall 2019, Saint Mary's College of California offered Ms. Rak a partial scholarship and the coxswain position on the rowing team.

3.      Soon after she joined the team, the Coaches engaged in an ongoing pattern of disability discrimination against Ms. Rak. Head Coach Anna Pytlak and Assistant Coach Gulliver Scott refused to accommodate Ms. Rak's disabilities. They would not use an electronic megaphone during most practices so she could hear their directions; instead, they berated Ms. Rak for making "stupid mistakes," such as not telling her boat to row on time during practice, because she could not hear them.

4.      Head Coach Pytlak likewise would not accommodate Ms. Rak's need for a mostly liquid diet during team snack breaks and meals, including during away tournaments, leaving Plaintiff to fend for herself or go hungry. The Coaches required Ms. Rak to participate in a 5K race and a strenuous hike, despite Ms. Rak's restriction on running and other high-impact exercises. The hike caused Ms. Rak to experience severe symptoms such as facial muscle spasms and slurred speech.

5.      Additionally, Head Coach Pytlak bullied Plaintiff, whose weight consistently remains around 100 pounds because of the effect her cancer treatment had on her pituitary gland, to gain weight ahead of races, even though the boat could meet the weight requirement with a sandbag provided by race officials. She pressured Plaintiff to overeat in front of her teammates, leading Plaintiff's teammates to similarly pressure Plaintiff.

6.      Unable to endure the discrimination any longer, Plaintiff resigned on October 10, 2021.

7.      Head Coach Pytlak likewise bullied and discriminated against other female

1

athletes, and consistently violated NCAA practice hours regulations, prompting Ms. Rak and other female rowers to complain to the athletics department on multiple occasions between in or around 2019 and 2021. However, compliance staff and members of the senior leadership team within the athletics department did not investigate and remedy these complaints because the athletes who made them are female.

8.      The discriminatory treatment based on her disabilities, sex, and gender has caused and continues to cause Plaintiff damages.

<u>PARTIES</u>

9.      Defendant Saint Mary's College of California ("Defendant" or "Saint Mary's") is a private, Catholic College in Moraga, California in Contra Costa County, California. At all relevant times herein, Defendant received funds from the Federal and California State governments.

10.     Lina Rak ("Plaintiff") is a resident of Pennsylvania, and at all relevant times herein was, an adult, resident of California. Plaintiff is female and has disabilities. She was a coxswain on Defendant's rowing team from in or around Fall 2019 to on or about October 10, 2021.

11.     In addition to the Defendants named above, Plaintiff sues fictitiously named Defendants Does 1 through 10, inclusive, pursuant to California Code of Civil Procedure Section 474, because their names, capacities, status, or facts showing them to be liable to Plaintiff are not presently known. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and such Defendants caused Plaintiff's damages as herein alleged. Plaintiff will amend this complaint to show these Defendants' true names and capacities, together with appropriate charging language, when such information has been ascertained.

12.     Each Defendant is sued individually and as the agent or employee of every other Defendant acting within the course and scope of said agency or employment, with the knowledge or consent of the other co-Defendants.

//

## JURISDICTION AND VENUE

13.    Jurisdiction and venue are proper in this Court pursuant to Section 395(a) of the California Code of Civil Procedure. The amount in controversy exceeds the jurisdictional minimum of this Court.

14.    Venue is proper in this county pursuant to Section 12965(a) of the California Government Code, because Defendant Saint Mary's is located within Contra Costa County, California and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within Contra Costa County, California.

## FACTUAL ALLEGATIONS

15.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

16.    Plaintiff was diagnosed with stage four neuroblastoma when she was about sixteen months old. She had tumors all over her body, including in her face. She battled the cancer for well over a year, including two incidences of sepsis, before finally going into remission. However, the cancer and treatment left Plaintiff with permanent physical disabilities:

    a.  Ms. Rak has hearing loss in both ears, but to a greater degree in her right ear, which doctors believe was caused either by the radiation or from sepsis. Hearing aids are not effective for Ms. Rak's hearing loss in situations where there is a lot of background noise, such as when she is on the water during rowing practice. Ms. Rak's hearing loss also causes a slight delay before she responds to someone during a conversation.

    b.  The radiation affected Ms. Rak's face shape and size and caused an underbite. Ms. Rak suffered complications during jaw surgeries to correct the underbite, causing severe trismus and resulting in partial facial paralysis and extremely limited jaw movement, necessitating a mostly liquid diet.

    c.  The radiation treatment caused Ms. Rak's facial muscles to function abnormally, causing symptoms such as slurred speech, facial muscle spasms, runny nose, and mouthwatering when she engages in running and other high-impact exercises.

     d.   The radiation affected Ms. Rak's pituitary gland, causing her weight to remain around 100 pounds as an adult.

17.    Plaintiff is an accomplished athlete with approximately 10 years of experience in rowing, including competing on the Junior National Team and competing in international races. She began the recruitment process for Division 1 sporting programs for rowing as a high schooler in or around Fall 2017.

18.    During her college search in or around Summer and Fall 2017, Plaintiff corresponded with Head Coach Pytlak at Defendant, before ultimately selecting the University of Alabama. Plaintiff again began corresponding with Head Coach Pytlak in or around Spring 2019. Plaintiff expressed her interest in transferring to Defendant and joining the rowing team.

19.    Upon her transfer to Defendant in or around Fall 2019, Plaintiff began participating on the rowing team as a coxswain. Plaintiff informed the Coaches of her need for accommodations due to her disabilities.

20.    Plaintiff's requested accommodations included: a mostly liquid diet, lower-impact exercises to avoid facial muscle spasms, time to attend physical therapy appointments to alleviate facial and neck muscle spasms, and the Coaches using an electronic megaphone during practice.

21.    Unfortunately, soon after her arrival, the Coaches began a campaign of disability discrimination against Plaintiff, including harassing comments and a failure to accommodate her disabilities.

22.    In or around September 2019, Assistant Coach Scott required Plaintiff to run a 5K, despite Plaintiff informing him repeatedly that she could experience severe side effects, including facial muscle spasms, from running.

23.    During practice, the Coaches followed the rowers in their own boat. Plaintiff estimates that the average distance between the team's boat and the Coaches' boat during practices was anywhere between around 300 feet to around 1,600 feet, making it extremely difficult, if not impossible, for Plaintiff to hear their instructions during practice. Not to mention, the sound of the water lapping against the boat, the wind, and other rowers talking,

1    made hearing the coaches' instructions even more challenging.

2        24.    Plaintiff asked the Coaches repeatedly throughout her approximately two years
3    on Defendant's rowing team to use electronic megaphones, but they refused to use them during
4    most practices. While they would use plastic cones to amplify their voices, given her hearing
5    loss, Plaintiff still could not hear them.

6        25.    On or about October 18, 2019, Novice Coach Ilyana Achziger laughed at Plaintiff
7    and told her, "You know, I was really pissed off that you weren't doing what I was saying, but
8    then I remembered that you had a hearing disability and then I couldn't be mad anymore," or
9    words to that effect. Plaintiff was offended, especially considering the coaches' continued
10   unwillingness to use electronic megaphones during practice.

11       26.    Beginning in or around Spring 2020, Assistant Coach Scott and Head Coach
12   Pytlak told Plaintiff on multiple occasions that she was making "stupid mistakes" on the water.
13   These mistakes included not telling her boat to row on time and not angling the boat in the
14   correct direction because she could not hear the Coaches' instructions. Not only were these
15   comments offensive and humiliating for Plaintiff, but she was also disappointed that she was
16   deprived of the opportunity to receive coaching at Defendant because of Defendant's refusal to
17   accommodate her hearing loss.

18       27.    In a particularly upsetting incident at practice in or around March 2020, Head
19   Coach Pytlak and Assistant Coach Scott yelled at Plaintiff in front of the rest of the team,
20   claiming that she is "stupid and just need[s] to listen better," or words to that effect, because she
21   could not hear their instructions.

22       28.    Rather than simply using an electronic megaphone during practice, Head Coach
23   Pytlak asked Plaintiff in front of Assistant Coach Scott, "Have you considered a hearing aid?"
24   or words to that effect. As if this comment was not offensive enough in and of itself, Plaintiff's
25   hearing loss could not be alleviated during practice on the water with a hearing aid, a fact of
26   which she informed Head Coach Pytlak.

27       29.    Plaintiff also faced discrimination at Defendant because of her limited jaw
28   movement. Snacks are an important part of rowing practice at Defendant, as the athletes become

fatigued and need to reenergize. The rowing team at Defendant had many away meets during Plaintiff's time on the team, during which Defendant would sponsor team meals from restaurants while the team traveled. The rowing team at Defendant also has team dinners to celebrate team achievements and facilitate team bonding.

30.    Head Coach Pytlak was aware of Plaintiff's need for a mostly liquid diet because of her limited jaw movement. Regardless, throughout Plaintiff's time on the team, Head Coach Pytlak did not accommodate Plaintiff's dietary needs despite Plaintiff's repeated pleas before meal orders and reminders after numerous meals she could not eat. In contrast, Head Coach Pytlak accommodated other non-disabled teammates' dietary needs.

31.    Much like her ignorant assumption that Plaintiff's hearing loss could be solved with a hearing aid, Head Coach Pytlak asked Plaintiff in front of other members of the team, "When are the wires going to be cut?" Evidently, she assumed Plaintiff's jaw was wired shut, and that she could avoid accommodating Plaintiff by putting the onus on her to get the supposed wires cut. Head Coach Pytlak continued to ask this demeaning question even after Plaintiff repeatedly reminded her that her limited jaw movement is permanent and there are no wires.

32.    Even the COVID-19 shut-down at Defendant did not shield Plaintiff from offensive commentary about her jaw disability. Plaintiff had most of her teeth removed during Summer 2020 to create more room in her mouth. She now has a fraction of the teeth that an average adult has. Plaintiff still needs a mostly liquid diet. She notified Head Coach Pytlak of the surgery. Nevertheless, Head Coach Pytlak continued to ask when the nonexistent wires would be cut.

33.    As COVID-19-related restrictions began to lift in the beginning of 2021, rowing team activities at Defendant resumed. Head Coach Pytlak arranged a mandatory team hike in or around January 2021. Plaintiff asked Head Coach Pytlak whether the hike would be strenuous, as she experiences facial spasms and difficulty breathing and talking when her body reaches its limits. Head Coach Pytlak dismissed Plaintiff's concerns about her disability and assured her the hike was easy and flat.

34.    The hike was neither easy, nor flat. It was 7 hours long, during which time there

were no bathroom breaks, no water, and no snacks. About 6 hours in, Plaintiff began to experience facial spasms in front of Head Coach Pytlak, her teammates, and Assistant Coach Vanessa Tavalero, who had recently replaced Assistant Coach Scott.

35.     Plaintiff observed Head Coach Pytlak's look of shock at witnessing Plaintiff's facial spasms, despite Plaintiff's advance notice to her about them. Finally recognizing the seriousness of the situation, Head Coach Pytlak even wondered aloud whether she "would have to call an ambulance," or words to that effect. Experiencing physical discomfort, humiliation, and frustration at Head Coach Pytlak once again not taking her disabilities seriously, Plaintiff left the hike early with Assistant Coach Tavalero.

36.     The rowing team was back on the water practicing during Spring semester 2021. Head Coach Pytlak violated NCAA regulations when she consistently went over the weekly hours limit for practices, which Plaintiff and some teammates timed.

37.     Plaintiff reported the hours violations to Student Engagement and Academic Success (SEAS) Coach Calvin Monroe in late February 2021. But, fearing retaliation from Head Coach Pytlak, Plaintiff requested to remain anonymous unless the athletics department needed her name for an investigation.

38.     On February 23, 2021, SEAS Coach Monroe emailed Plaintiff's anonymous complaint about the hours violations to Associate Athletics Director for Academic Support Kari Montero, who in turn included Associate Athletics Director for Compliance Nicole Kavlick and Associate Athletics Director for Development Staci Byrne on the email thread regarding the complaint. Compliance services, a subdivision of Defendant's athletics department of which Associate Athletics Director for Compliance Kavlick is a part, is also responsible for ensuring compliance with Title IX.

39.     On February 25, 2021, Plaintiff emailed a document recording the hours violations to Student Engagement and Academic Success (SEAS) Coach Calvin Monroe, following Associate Athletics Director for Compliance Kavlick's request for additional information, including which team made the report. SEAS Coach Monroe then forwarded the information to Associate Athletics Director for Compliance Kavlick. However, based on

7

information and belief, Defendant did not conduct an investigation of the hours violations, and the violations continued.

40.    On or about March 5, 2021, Plaintiff met with Head Coach Pytlak and Assistant Coach Tavalero regarding her need for accommodation so she could hear the Coaches during practice. Head Coach Pytlak asked Plaintiff where she was in the process of getting a hearing aid. Plaintiff again explained that a hearing aid would not alleviate her type of hearing loss during practice on the water, to which Head Coach Pytlak replied, "Hmm, bummer," or words to that effect.

41.    On or about March 27, 2021, Head Coach Pytlak and Novice Coach Achziger laughed at Plaintiff when she did not tell her boat to row because she did not hear Head Coach Pytlak tell them to begin. Once again, Plaintiff was humiliated in front of her teammates because of the Coaches' failure to use electronic megaphones and their vicious treatment because she is an athlete with disabilities.

42.    Plaintiff once again requested that Head Coach Pytlak use an electronic megaphone during practice, or perhaps give Plaintiff the practice plan in advance. Head Coach Ptylak responded, "What are some *actual* things I can do?" or words to that effect and claimed that even if she did use an electronic megaphone, she could not turn it up to full volume because it would drain the battery. Head Coach Pytlak did not propose any alternatives, leaving Plaintiff to continue to struggle through practices without being able to hear instructions.

43.    On or about April 16, 2021, which coincidentally was 20 years to the day that Plaintiff was diagnosed with cancer, Plaintiff asked Head Coach Pytlak what food she was planning to order for the regatta that coming weekend. Despite knowing about Plaintiff's extremely limited jaw movement and mostly liquid diet since 2019, Head Coach Pytlak laughed at Plaintiff and asked, "Why, do you have a food allergy or something?" Plaintiff reminded Head Coach Pytlak about her restrictions. Head Coach Pytlak told Plaintiff that she either must bring her own food or pick the restaurant, a task that was not expected of team members without disabilities. Plaintiff finally found a restaurant that would be able to accommodate her needs, as well as those of vegetarian and vegan team members.

44.     However, Plaintiff was ultimately forced to bring her own food when Head Coach Pytlak gave into a couple of team members' complaints about Plaintiff's choice of restaurant. Unlike Plaintiff, who was physically unable to eat the food provided, her team members' complaints surrounded what they were in the mood to eat, which Head Coach Pytlak privileged over Plaintiff's disability.

45.     Likewise, on or about May 14 or 15, 2021, Head Coach Pytlak did not accommodate Plaintiff's dietary restrictions at a team lunch at Vancouver Lake in Washington. In a potentially life-threatening and embarrassing incident during this team lunch, Plaintiff choked on noodles in front of about 10 teammates and Head Coach Pytlak's husband because of the lack of appropriate food choices provided.

46.     Head Coach Pytlak also targeted Plaintiff because of her weight, which is a side effect of her cancer treatment's effect on her pituitary gland. As a result, Plaintiff is of a shorter stature than she would have been absent the cancer treatment and has a consistent weight of about 100 pounds. Leading up to the rowing West Coast Conference on or about May 13-16, 2021, Head Coach Pytlak commented in front of Plaintiff's teammates and Associate Athletics Director for Compliance Piper Brewster that she needed to eat as much as she could to make weight. In turn, this led to Plaintiff's teammates pressuring her to overeat. This toxic and discriminatory commentary came even though the team could have simply added a sandbag provided by race officials to the boat to make weight for the race. Associate Athletics Director for Compliance Brewster silently stood by, never addressing these comments with Plaintiff.

47.     On at least three occasions from in or around 2020 to in or around 2021, Head Coach Pytlak mocked another rower who walked with splayed feet. Head Coach Pytlak made comments to this rower in front of other members of the team, including Plaintiff, such as, "Why don't you just walk normally?" and "Why don't you try walking normally?" or words to that effect. Head Coach Pytlak even went so far as to demonstrate to this athlete how to walk without splayed feet in front of other members of the team, including Plaintiff.

48.     Yet another rower with disabilities on the team at Defendant was a victim of

9

disability discrimination at the hands of the Coaches. This rower has an auditory processing disorder, which made it difficult for her to listen to and process the Coaches' workout plans in real time. Accordingly, this rower requested for the Coaches to write their workout plans for her. They refused. This rower was left, much like Plaintiff, to fend for herself as a rower with a disability.

49.     Despite the total lack of accommodations for this rower, in or around May 2021, Novice Coach Achziger threatened her in front of Plaintiff and several other members of the team, "I'm sick and tired of making accommodations for you. If you request one more accommodation, I'm not going to put you into that boat," or words to that effect. Plaintiff offered to report this disability discrimination to Defendant's administration for this rower, but she was too afraid to come forward herself.

50.     Plaintiff submitted what she requested to be an anonymous complaint at the end of the season in or around May 2021 to Defendant's athletics department regarding the disability discrimination to which she had been subjected since in or around Fall 2019. Plaintiff included the other rower's experiences with disability discrimination as well. Defendant's then-Senior Associate Athletics Director for Compliance Brewster responded with, "Thanks Lina. We will look into this," or words to that effect. However, after Senior Associate Athletics Director for Compliance Brewster left her position, nobody followed up on Plaintiff's complaint. Like Associate Athletics Director for Compliance Kavlick, then-Senior Associate Athletics Director for Compliance Brewster was responsible for ensuring compliance with Title IX.

51.     Unfortunately, Associate Athletics Director for Compliance Kavlick and then-Senior Associate Athletics Director for Compliance Brewster did not investigate Plaintiff and other female rowers' complaints. Defendant has also failed to investigate and remedy allegations of wrongdoing that other female athletes have reported, even when these athletes have reported them directly to members of the athletics department's senior leadership team, who oversee compliance directors and staff.

52.     At the end of the 2018-2019 school year, female rowers reported alleged

wrongdoing they experienced at the hands of Head Coach Pytlak to Deputy Athletics Director for Internal Operations/SWA Kami Gray, who is a member of the athletics department senior leadership team. Deputy Athletics Director for Internal Operations/SWA Gray did not investigate the complaints.

53.    In or around 2018, a female rower notified Head Coach Pytlak that she needed to resign from the team for personal reasons, resulting in Head Coach Pytlak lobbing a series of degrading comments at her. This female rower reported Head Coach Pytlak's wrongdoing to Vice President for Intercollegiate Athletics Mike Matoso, who heads up the athletics department senior leadership team. Based on information and belief, Vice President for Intercollegiate Athletics Matoso did not investigate this female rower's complaint.

54.    The Fall 2021 rowing season brought with it a renewed round of discriminatory treatment from Head Coach Pytlak and Ilyana Achziger, who had been promoted from Novice Coach to Assistant Coach upon Assistant Coach Tavalero's departure.

55.    Then going into her third season of coaching Plaintiff, Head Coach Pytlak still refused to use an electronic megaphone during most practices.

56.    In a particularly hurtful incident during practice, Head Coach Pytlak brought breakfast for the team during practice, including some protein shakes. At first, Plaintiff was relieved and excited because she thought that Head Coach Pytlak had finally accommodated her need for a mostly liquid diet by providing her a protein shake. But Plaintiff was humiliated when the team captain yelled at her for taking a protein shake because apparently Head Coach Pytlak intended for those to go to the vegans on the team, while Plaintiff was evidently supposed to go hungry once again.

57.    Plaintiff arranged a meeting with Head Coach Pytlak and Assistant Coach Achziger on or about October 6, 2021, to discuss their ongoing disability discrimination against her. During this meeting, Plaintiff informed the Coaches that she and some of her teammates had noticed the Coaches treating Plaintiff differently based on her disabilities.

58.    Brushing Plaintiff's allegations of disability discrimination aside, the Coaches responded that Plaintiff was the most challenging athlete they had ever coached. They claimed

they would correct their behavior when Plaintiff corrected hers, which amounted to asking for reasonable accommodations and asking the Coaches to repeat instructions because she could not hear them.

59.     Head Coach Pytlak claimed that the Coaches could tell Plaintiff does not want feedback, without giving any explanation or examples. When Plaintiff asked what Head Coach Pytlak meant by that claim, Assistant Coach Achziger interjected that, "we can just see it," or words to that effect. Humiliated and disappointed at the Coaches' blatant bias based on her facial and processing differences, Plaintiff reiterated that she has partial facial paralysis and that having hearing loss requires her to take a moment to process what people say before she responds.

60.     Neither Coach discussed accommodations with Plaintiff, nor did they give any indication that the offensive comments, which had continued for approximately 2 years, would cease.

61.     Plaintiff, who was not yet 22 years old in Fall 2021, was reluctant to leave the sport she had loved for approximately half of her life. But, unable to bear the abusive environment Head Coach Pytlak created on the team any longer, Plaintiff emailed her resignation to Head Coach Pytlak on October 10, 2021. She blind carbon copied President of Defendant Richard Plumb (who is himself a former rower), Vice President for Intercollegiate Athletics Matoso, and Associate Athletics Director for Compliance Kavlick. Plaintiff cited the continuous pattern of offensive remarks from the Coaches about her disabilities and the lack of accommodations for her disabilities as the main reasons for her resignation.

62.     Defendant's Human Resources (HR) department launched an investigation into the allegations raised later that month. HR Senior Manager Erika Roesch shared the department's findings with Plaintiff on January 11, 2022.

63.     Defendant's HR department found that "the [C]oaches effectively denied some of Lina's requests for reasonable accommodations" and that "it is possible that Lina's physical disabilities contributed to her [C]oaches' misinterpreting her reaction to their coaching feedback." Yet, contrary to its own findings, HR did conclude discrimination had occurred.

64.     There is no indication that HR investigated the demeaning and discriminatory commentary to which the Coaches subjected Plaintiff. Moreover, HR evidently did not interview other female rowers as part of its investigation into disability discrimination against other female rowers with disabilities. Instead, HR relied solely on Student Disability Services (SDS) records to dubiously conclude that because no female rowers registered with SDS had submitted complaints of discrimination there must not be any discrimination occurring.

65.     Following her departure, Plaintiff's former teammates informed her that Head Coach Pytlak called a team meeting and admonished them to come directly to her with complaints instead of going to Compliance.

66.     Despite HR's finding that Head Coach Pytlak engaged in discriminatory conduct against Plaintiff, the University ratified her wrongful conduct by selecting her for its Compliance Coordinator position in its athletics department, where she is charged with investigating the same types of claims Plaintiff and several other female rowers brought against her, and that she discouraged Plaintiff's teammates from reporting to Compliance.

### FIRST CAUSE OF ACTION
### DISABILITY DISCRIMINATION
29 U.S.C. § 794

67.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

68.     It is unlawful for any program or activity receiving federal funds to discriminate against a qualified individual with a disability. (29 U.S.C. § 794.)

69.     Defendant is a college that receives federal funds. Thus, Defendant is a program or activity receiving Federal financial assistance.

70.     Plaintiff is a qualified person with disabilities, as she has "physical […] impairment(s) that substantially limit[] one or more major life activities." (29 U.S.C. § 794(a); 42 U.S.C. § 12102(1)(a).)

71.     Defendant subjected Plaintiff to discrimination based on her disabilities.

72.     The Coaches failed to accommodate Plaintiff's hearing loss by using megaphones during practice. Head Coach Pytlak failed to accommodate Plaintiff's need for a

mostly liquid diet and her restrictions regarding running and other high-impact exercises.

73.    The Coaches subjected Plaintiff to harassing commentary about her disabilities, including but not limited to telling her she was making "stupid mistakes" on the water when she could not hear them due to her hearing loss and their failure to use megaphones during practice.

74.    Head Coach Pytlak also targeted Plaintiff based on her weight, which is a long-lasting side-effect of her cancer treatment, and pressured Plaintiff to overeat so she could make weight for an upcoming tournament. In turn, Plaintiff's teammates pressured her to overeat.

75.    Finally, the disability discrimination became too much for Plaintiff to bear, culminating in her resignation from the team on October 10, 2021.

76.    Plaintiff was harmed and the discriminatory conduct was a substantial factor in causing her harm.

77.    The above discriminatory conduct violates 29 U.S.C. section 794. Plaintiff is therefore entitled to compensatory damages.

78.    As a result of the above discriminatory conduct, Plaintiff has retained attorneys to prosecute this action. Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

**SECOND CAUSE OF ACTION**
**DISABILITY DISCRIMINATION**
Edc. Code § 66270

79.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

80.    It is unlawful for "any program or activity conducted by any postsecondary educational institution that receives, or benefits from, state financial assistance or enrolls students who receive state student financial aid" to discriminate against a person because of their disability. (Edc. Code § 66270.)

81.    Defendant is a postsecondary institution that enrolls students who receive state financial aid. Defendant's women's rowing team is a program or activity conducted by a postsecondary institution that enrolls students who receive state financial aid. Thus, Defendant, and its women's rowing team are subject to Education Code section 66270.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

82.     Plaintiff is a qualified person with disabilities, as she has a "physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss" affecting her "musculoskeletal, special sense organs, respiratory, including speech organs, [...] and endocrine" systems that "[l]imits a major life activity." (Edc. Code § 66260.5; Gov. Code § 12926(m)(1)(A); (B).)

83.     Defendant subjected Plaintiff to discrimination based on her disabilities as alleged above.

84.     Finally, the disability discrimination became too much for Plaintiff to bear, culminating in her resignation from the team on October 10, 2021.

85.     Plaintiff was harmed and the discriminatory conduct was a substantial factor in causing her harm. She suffers mentally and emotionally from the trauma of being discriminated against because of her disabilities.

86.     The above discriminatory conduct violates Edc. Code section 66270, as well as the public policy of the state of California. Plaintiff is therefore entitled to all categories of damages, including, but not limited to, economic and non-economic damages.

87.     As a result of the above conduct, Plaintiff has retained attorneys to prosecute this action. Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

88.     Defendants and its managing agents engaged in the above conduct maliciously, fraudulently, and oppressively, or in conscious disregard of the rights and safety of Plaintiff and other rowers with disabilities. Plaintiff is entitled to recover punitive damages.

**THIRD CAUSE OF ACTION**
**DISABILITY DISCRIMINATION**
Gov. Code § 11135(a)

89.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

90.     It is unlawful for programs and activities "receiv[ing] any financial assistance from the state" to discriminate against someone because of their disability. (Edc. Code § 11135(a).)

91.     Defendant is a recipient of California state funds exceeding $10,000 per state fiscal year. (2 C.C.R. § 11150.) Thus, Defendant is subject to Government Code section 11135(a).

92.     Plaintiff is a qualified person with disabilities, as she has a "physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss" affecting her "musculoskeletal, special sense organs, respiratory, including speech organs, […] and endocrine" systems that "[l]imits a major life activity." (Gov. Code § 11135(c); Gov. Code § 12926(m)(1)(A); (B).)

93.     Defendant subjected Plaintiff to discrimination based on her disabilities as alleged above.

94.     Finally, the disability discrimination became too much for Plaintiff to bear, culminating in her resignation from the team on October 10, 2021.

95.     Plaintiff was harmed and the discriminatory conduct was a substantial factor in causing her harm. She suffers mentally and emotionally from the trauma of being discriminated against because of her disabilities.

96.     The above conduct violates Gov. Code section 11135(a), as well as the public policy of the state of California. Plaintiff is therefore entitled to all categories of damages, including, but not limited to, economic and non-economic damages.

97.     As a result of the above conduct, Plaintiff has retained attorneys to prosecute this action. Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

98.     Defendant and its managing agents engaged in the above conduct maliciously, fraudulently, and oppressively, or in conscious disregard of the rights and safety of Plaintiff and other rowers with disabilities. Plaintiff is entitled to recover punitive damages.

**FOURTH CAUSE OF ACTION**
SEX DISCRIMINATION
20 U.S.C. § 1681(a)

99.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

16
COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

100.   It is unlawful for "any educational program or activity receiving Federal financial assistance" to discriminate against someone "on the basis of sex." (20 U.S.C. § 1681(a).)

101.   "[A]n educational institution which is controlled by a religious organization" is exempt "if the application of [20 U.S.C. § 1681(a)] would not be consistent with the religious tenets of such organization." (20 U.S.C. § 1681(a)(3).)

102.   Defendant is a recipient of Federal financial assistance.

103.   The application of 20 U.S.C. section 1681(a) is consistent with the religious tenets of its controlling religious organization.

104.   Thus, Defendant is subject to 20 U.S.C. section 1681(a).

105.   Senior members of compliance staff in Defendant's athletics department, as well as members of the senior leadership team in Defendant's athletics department, all of whom have the authority and responsibility to investigate and remedy Title IX (20 U.S.C. § 1681(a)) and other types of violations, received allegations of wrongdoing from Plaintiff and other female athletes from in or around 2019 to 2021, as alleged above.

106.   However, based on information and belief, none of these complaints from Plaintiff and other female athletes were investigated or remedied, including several complaints of wrongdoing against Head Coach Pytlak regarding discrimination and NCAA hours violations.

107.   Vice President for Intercollegiate Athletics Matoso, Deputy Athletics Director for Internal Operations/SWA Gray, Associate Athletics Director for Compliance Kavlick, Associate Athletics Director for Academic Support Montero, Associate Athletics Director for Development Byrne, and former Senior Associate Athletics Director for Compliance Brewster failed to investigate and remedy these complaints because the athletes who made them are female, thus subjecting them to sex-based discrimination.

108.   In turn, the above listed representatives from Defendant's athletics department, who are likewise responsible for investigating and remedying Title IX violations, themselves violated Title IX by their failure to investigate and remedy Plaintiff's and other female athletes'

1 complaints because they are female.

2      109.    Plaintiff was harmed and the discriminatory conduct was a substantial factor in

3 causing her harm.

4      110.    The above discriminatory conduct violates 20 U.S.C. section 1681(a). Plaintiff is

5 therefore entitled to compensatory damages.

6      111.    As a result of the above discriminatory conduct, Plaintiff has retained attorneys

7 to prosecute this action. Plaintiff is therefore entitled to reasonable attorney's fees and litigation

8 expenses, including expert witness fees and costs, incurred in bringing this action.

9
10

**FIFTH CAUSE OF ACTION**
GENDER DISCRIMINATION
Edc. Code § 66270

11      112.    Plaintiff incorporates by reference the allegations set forth in the preceding

12 paragraphs.

13      113.    It is unlawful for "any program or activity conducted by any postsecondary

14 educational institution that receives, or benefits from, state financial assistance or enrolls

15 students who receive state student financial aid" to discriminate against a person because of

16 their gender. (Edc. Code § 66270.)

17      114.    Defendant is a postsecondary institution that enrolls students who receive state

18 financial aid. Defendant's women's rowing team is a program or activity conducted by a

19 postsecondary institution that enrolls students who receive state financial aid. Thus, Defendant,

20 and its women's rowing team are subject to Education Code section 66270.

21      115.    Plaintiff is a woman. Thus, she is in a protected class based on her gender.

22      116.    Senior members of compliance staff in Defendant's athletics department, as well

23 as members of the senior leadership team in Defendant's athletics department, received

24 allegations of wrongdoing from Plaintiff and other female athletes from in or around 2019 to

25 2021, as alleged above.

26      117.    However, based on information and belief, none of these complaints from

27 Plaintiff and other female athletes were investigated or remedied, including several complaints

28 of wrongdoing against Head Coach Pytlak regarding discrimination and NCAA hours

18

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1 | violations.

2 | 118.    Vice President for Intercollegiate Athletics Matoso, Deputy Athletics Director
3 | for Internal Operations/SWA Gray, Associate Athletics Director for Compliance Kavlick,
4 | Associate Athletics Director for Academic Support Montero, Associate Athletics Director for
5 | Development Byrne, and former Senior Associate Athletics Director for Compliance Brewster
6 | failed to investigate and remedy these complaints because the athletes who made them are
7 | female, thus subjecting them to sex-based discrimination in violation of Education Code
8 | section 66270.

9 | 119.    Plaintiff was harmed and the discriminatory conduct was a substantial factor in
10 | causing her harm. She suffers mentally and emotionally from the trauma of being discriminated
11 | against because of her gender.

12 | 120.    The above conduct violates Edc. Code section 66270, as well as the public policy
13 | of the state of California. Plaintiff is therefore entitled to all categories of damages, including,
14 | but not limited to, economic and non-economic damages.

15 | 121.    As a result of the above conduct, Plaintiff has retained attorneys to prosecute this
16 | action. Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses,
17 | including expert witness fees and costs, incurred in bringing this action.

18 | 122.    Defendant and its managing agents engaged in the above conduct maliciously,
19 | fraudulently, and oppressively, or in conscious disregard of the rights and safety of Plaintiff and
20 | other female rowers. Plaintiff is entitled to recover punitive damages.

## SIXTH CAUSE OF ACTION
### SEX DISCRIMINATION
#### Gov. Code § 11135(a)

123.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs.

124.    It is unlawful for programs and activities "receiv[ing] any financial assistance from the state" to discriminate against someone because of their sex. (Edc. Code § 11135(a).)

125.   Defendant is a recipient of California state funds exceeding $10,000 per state fiscal year. (2 C.C.R. § 11150.) Thus, Defendant is subject to Government Code section 11135(a).

126.   Plaintiff is a woman. Thus, she is in a protected class based on her sex.

127.   Defendant discriminated against Plaintiff based on her sex as alleged above.

128.   Plaintiff was harmed and the discriminatory conduct was a substantial factor in causing her harm. She suffers mentally and emotionally from the trauma of being discriminated against because of her sex.

129.   The above conduct violates Gov. Code section 11135(a), as well as the public policy of the state of California. Plaintiff is therefore entitled to all categories of damages, including, but not limited to, economic and non-economic damages.

130.   As a result of the above conduct, Plaintiff has retained attorneys to prosecute this action. Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

131.   Defendant and its managing agents engaged in the above conduct maliciously, fraudulently, and oppressively, or in conscious disregard of the rights and safety of Plaintiff and other female rowers. Plaintiff is entitled to recover punitive damages.

PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

a.   General damages according to proof, however, no less than the jurisdictional limit of this court;

b.   Special damages in amounts according to proof, together with prejudgment interest;

c.   Exemplary and punitive damages in amounts according to proof;

d.   Reasonable attorneys' fees and costs pursuant to Government Code Section 12965(c)(6) and any other applicable statute;

e.   Interest as provided by law;

f.   Injunctive relief to require Defendant to develop and implement policies and procedures to ensure that effective remedial measures are taken when discrimination is reported; and

g.   For such other and further relief as this Court deems equitable and appropriate.

Dated:   September 30, 2022

**CALIFORNIA CIVIL RIGHTS LAW GROUP**

*Emily Kohlheim*

Emily G. Kohlheim, Esq.

Attorneys for Plaintiff Lina Rak

---

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated:   September 30, 2022

**CALIFORNIA CIVIL RIGHTS LAW GROUP**

*Emily Kohlheim*

Emily G. Kohlheim, Esq.

Attorneys for Plaintiff Lina Rak

22